Herman B. ADKINS, Petitioner,

v.

U.S. DEPARTMENT OF LABOR, OF-
FICE OF WORKERS' COMPENSA-
TION, DIVISION OF COAL MINE
WORKERS' COMPENSATION, Re-
spondent.

No. 84–2200.

United States Court of Appeals,
Fourth Circuit.

Argued March 3, 1987.

Decided July 17, 1987.

Lawrence J. Moise, III (Robert Austin Vinyard, Abingdon, Va., on brief), for petitioner.

Jeffrey J. Bernstein, Office of Sol., Dept. of Labor (Francis X. Lilly, Sol. of Labor, Donald S. Shire, Associate Sol., William O. Puncer, Dept. of Labor, Washington, D.C., on brief), for respondent.

Before WINTER, Chief Circuit Judge, ERVIN, Circuit Judge, and YOUNG, United States District Judge for the District of Maryland, sitting by designation.

ERVIN, Circuit Judge:

Petitioner Adkins worked for fifteen years in and around coal mines. His duties as a miner included hand loading coal, working on the coal cutting machine, picking rock, and working as a brakeman and check weighman. His employment as a miner ended in 1951 when he took a job with a union, working in and out of an office but not in any coal mines. He retired from union work in 1980. Adkins testified at an administrative hearing that he has never smoked, but that he started having trouble breathing while working as a miner and that his breathing impairment has continued to this day.

Adkins filed a claim for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.* (1982), on August 3, 1979. The case was referred to an administrate law judge ("ALJ"). After a hearing, the ALJ determined that Adkins had properly invoked the interim presumption of total disability due to pneumoconiosis on the basis of x-ray evidence. *See* 20 C.F.R. § 727.203(a)(1) (1986). The ALJ also concluded, however, that the interim presumption of disability was rebutted by the Director, Office of Workers' Compensation Programs ("the Director"), both by a showing that Adkins was not totally disabled, *see id.* § 727.203(b)(2),[1] and by a showing

---

1. The interim presumption of total disability due to coal mine-related pulmonary impairment is rebutted under (b)(2) only if "[i]n light of all relevant evidence it is established that the individual is able to do his usual coal mine work or

that whatever disability Adkins had did not arise out of coal mine employment. *See id.* § 727.203(b)(3).[2] In addition, the ALJ rejected Adkins' claim under the provisions of 20 C.F.R. § 410 (1986). Accordingly, the ALJ denied benefits to Adkins.

Adkins appealed the ALJ's decision to the Benefits Review Board ("BRB"). The BRB affirmed the denial of benefits on the theory that rebuttal of the interim presumption under 20 C.F.R. § 727.203(b)(3) (1986) was proper in this case. The BRB did not evaluate the legal sufficiency of the Director's rebuttal under § 727.203(b)(2), because the (b)(3) rebuttal appeared to the BRB to be supported by substantial evidence.

Adkins appealed to the United States Court of Appeals for the Eleventh Circuit. The case was transferred to this court in November, 1984, pursuant to 28 U.S.C. § 1631 (1982). On appeal, the Director argues that the BRB should not have affirmed on the basis of a § 727.203(b)(3) rebuttal, but that the error is harmless, since the ALJ's determination of rebuttal under (b)(2) is supported by substantial evidence.

We agree that the BRB's handling of the case was improper and we remand the case to the Secretary for consideration of: (1) whether there is sufficient evidence to support the ALJ's determination that Adkins is able to do his usual coal mine work or comparable work; (2) if there is insufficient evidence that Adkins could continue on the job, whether, in light of the presumed fact of total disability, there is sufficient evidence that Adkins' impairment did not arise in whole or in part from his coal mine employment. The answer to question (1) must be "yes" for rebuttal to be found under (b)(2); the answer to question (2) must be "yes" for rebuttal to be found under (b)(3).

The x-ray evidence of record in Adkins' case consisted of two films which were interpreted a total of six times. Two of these readings, one for each x-ray, concluded that the film quality was unacceptable. One B-reader's reading of the first film was negative.[3] The other three readings, all of the second x-ray, were positive for pneumoconiosis. Two of these later readings were by B-readers. The ALJ concluded that Adkins had invoked the interim presumption of total disability, *see* 20 C.F.R. § 727.203(a)(1) (1986), on the basis of this x-ray evidence.[4]

The ALJ then reviewed the results of the single blood gas and single ventilatory study done on Adkins. Both studies produced results that do not qualify under the 20 C.F.R. § 727.203(a) values for invoking the interim presumption. Solely on the basis of these nonqualifying studies, the ALJ held that the interim presumption was rebutted under § 727.203(b)(2), because Adkins was not totally disabled.

The ALJ next considered the only medical report in the record: Dr. Dunbar's. Dr. Dunbar examined Adkins in 1979. The

---

comparable and gainful work." 20 C.F.R. § 727.203(b)(2) (1986).

2. The interim presumption is rebutted under (b)(3) only if "[t]he evidence establishes that the total disbility or death of the miner did not arise in whole or in part out of coal mine employment." 20 C.F.R. § 727.203(b)(3) (1986).

3. A B-reader is a radiologist who has been certified by or on behalf of the Department of Health and Human Services as an expert in interpreting x-rays that evidence pneumoconiosis. The opinion of a B-reader may be accorded greater weight by a factfinder than the opinion of a reader who is not certified at the "B" level.

4. The ALJ appears to have made this determination by weighing the x-ray evidence and concluding that the preponderance fell in Adkins' favor. This court, sitting en banc, has rejected the "preponderance of the evidence" approach to invocation of the interim presumption. *See Stapleton v. Westmoreland Coal Co.,* 785 F.2d 424, 426 (4th Cir.1986), *cert. granted sub nom. Mullins Coal Co. v. Director, Office of Workers' Compensation Programs,* —— U.S. ——, 107 S.Ct. 871, 93 L.Ed.2d 826 (1987). Although the error is harmless in this case, since the ALJ ultimately did invoke the presumption, it is not *meaningless* error. When a § 727.203(a) presumption is invoked under a preponderance of evidence standard, the presumption is made conclusive as to the actual fact that has been proved. *See id.* at 447–48 (Phillips, J., concurring in part and dissenting in part), 455 (Sprouse, J., concurring). In this case, then, the existence of pneumoconiosis has been irrebuttably proved.

medical history taken by Dr. Dunbar indicates that Adkins had no history of and had never been told of any chronic bronchitis; however, the doctor diagnosed chronic bronchitis as the explanation for Adkins' pulmonary impairment. In answer to the medical form question, "In your opinion is the diagnosed condition related to dust exposure in the patient's coal mine employment," Dr. Dunbar checked the box labeled "no." The form requests that the doctor provide a medical rationale for the answer to this question, but Dr. Dunbar offered no rationale. The ALJ viewed Dr. Dunbar's opinion as conclusive, but only on the question of etiology. The ALJ adjudged Adkins' disability to have arisen from something other than his coal mine employment; thus, the ALJ found that the interim presumption was rebutted under § 727.-203(b)(3) as well as (b)(2).

The regulations governing benefits for black lung disease at 20 C.F.R. § 727.203 (1986) set out a reasonably straightforward analytical process that was not followed in this case. Adkins established, by means of x-ray evidence, that he had pneumoconoiosis. *See supra* note 4. He is thus presumed to be totally disabled from this pneumoconiosis, due to his coal mine employment. 20 C.F.R. § 727.203(a) (1986). The next question for the trier of fact is whether that presumption was rebutted.

■ There is no question that Adkins was not in fact "doing his usual coal mine employment or comparable and gainful work." *Id.* § 727.203(b)(1). The first important question is whether "[i]n light of all relevant evidence it is established that [Adkins] is able to do his usual coal mine work or comparable and gainful work." *Id.* § 727.203(b)(2). The ALJ concluded that Adkins was able to do such work, solely because of two nonqualifying test results. The BRB did not review this conclusion.

As this court has recently said, the least that is required for rebuttal under (b)(2) is that consideration be given to the physical demands placed on a claimant by his work. *See Sykes v. Director, Office of Workers' Compensation Programs,* 812 F.2d 890,

893 (4th Cir.1987). No such consideration was given to Adkins' actual employment in this case. We remand to the BRB in order that it may consider whether there is sufficient evidence in this record for rebuttal under (b)(2) in light of *Sykes* and the paucity of expert opinion on the extent of Adkins' impairment.

■ As the Director concedes in his brief, the rebuttal method at 20 C.F.R. § 727.203(b)(3) is premised on the fact that the miner is totally disabled. Rebuttal is accomplished under (b)(3) only if the employer *"rule[s] out"* the causal relationship between the miner's total disability and his coal mine employment." *Bethlehem Mines Corp. v. Massey,* 736 F.2d 120, 223 (4th Cir.1984). Although Dr. Dunbar expressed an opinion that Adkins' impairment was due to chronic bronchitis and not due to coal mine employment, this opinion is unexplained and is at odds with the medical history that this physician reported. In addition, Dr. Dunbar rendered his opinion on the cause of Adkins' impairment on September 5, 1979, but he dated his reading of Adkins' x-ray September 26, 1979—three weeks later.

■ Dr. Dunbar's opinion is also at odds with the conclusive presumption that Adkins has pneumoconiosis. *See supra* note 4. The regulations define "pneumoconiosis" to mean "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairment, *arising out of coal mine employment."* 20 C.F.R. § 727.202 (1986) (emphasis added). The ALJ weighed the x-ray evidence and found that the preponderance of evidence indicated that Adkins had pneumoconiosis. To rebut this finding under § 727.203(b)(3), one would have to show that this miner's particular pneumoconiosis did not arise out of coal mine employment; that is the only way that the causal connection could be "ruled out" in a case such as this. Instead, the ALJ and the BRB relied on Dr. Dunbar's summary diagnosis of "chronic bronchitis" without explaining the origin of Adkins' pneumoconiosis and why his pneumoconiosis did not contribute to his pulmonary impairment.

On remand, the BRB should first consider whether the ALJ correctly determined that Adkins is not totally disabled under (b)(2); if there is not substantial evidence to support the ALJ's conclusion that Adkins is totally disabled, then the BRB should inquire into the cause of Adkins' disability under (b)(3). Given the conclusive presumption of the existence of pneumoconiosis in this case, rebuttal cannot be accomplished under (b)(3) unless that pneumoconiosis can be said not to contribute at all to Adkins' pulmonary impairment.

REVERSED AND REMANDED.