998 F.2d 1009
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
ISLAND CREEK COAL COMPANY, Petitioner,
v.
Sam KINSLOW; Director, Office of Workers' Compensation
Programs, United States Department of Labor, Respondents.
 No. 92-1863.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 9, 1993.
Decided: July 16, 1993.
 
 On Petition for Review of an Order of the Benefits Review Board. (89-2568-BLA)
 Douglas Allan Smoot, Jackson & Kelly, Charleston, West Virginia, for Petitioner.
 William C. Garrett, Gassaway, West Virginia, for Respondent.
 Martin E. Hall, Jackson & Kelly, Lexington, Kentucky, for Petitioner.
 Ben.Rev.Bd.
 AFFIRMED.
 Before PHILLIPS and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 In 1979, Sam Kinslow filed a claim against Island Creek Coal Company (ICC) for black lung benefits under 30 U.S.C. §§ 901 et seq. (1985 & Supp. 1992). Thirteen years later, on the third appeal of the case to the Benefits Review Board (Board), Kinslow's benefits award was affirmed. Kinslow v. Island Creek Coal Co., BRB No. 892568 BLA (June 16, 1992). ICC appeals. Finding the Board's decision to be supported by substantial evidence and consistent with applicable law, Grizzle v. Pickands Mather & Co./Chisolm Mines, No. 91-1078, slip. op. at 5 (4th Cir. June 2, 1993), we affirm.
 
 
 2
 It is conceded that Kinslow was entitled to the interim presumption of total disability due to pneumoconiosis on the basis of x-ray evidence. 20 C.F.R. § 727.203(a)(1) (1992). The sole issue on appeal is whether ICC rebutted that presumption by ruling out any connection between the disability and Kinslow's coal mine employment. Id. § 727.203(b)(3) ("s (b)(3) rebuttal"); Bethlehem Mines Corp. v. Massey, 736 F.2d 120 (4th Cir. 1984); Borgeson v. Kaiser Steel Corp., 12 BLR 1-169 (1989).
 
 
 3
 The Administrative Law Judge (ALJ) found that the only reasoned medical opinion of record was that of Dr. Zaldivar, who diagnosed Kinslow as suffering ischemic (muscular) heart disease, shortness of breath, and bronchitis. Dr. Zaldivar testified that the shortness of breath was caused solely by the heart disease and not by the coal dust in Kinslow's lungs. When asked whether coal dust exposure could have caused or aggravated Kinslow's disability, he stated that it could not. J.A. 163-66.
 
 
 4
 The ALJ and the Board nevertheless found ICC to have failed to establish § (b)(3) rebuttal because Dr. Zaldivar did not expressly refute any connection between Kinslow's exposure to coal dust and his bronchitis, or between the bronchitis and his disability. ICC argues that Dr. Zaldivar necessarily (if implicitly) ruled out any such connection when he denied that Kinslow's disability was"caused in whole or in part by coal dust exposure[.]" J.A. 166. We reject that argument for reasons given by the ALJ, J.A. 33, approved by the Board, J.A. 37-38, and relied upon by this and other circuits in cases generally on point. Adkins v. United States Dep't of Labor, Office of Workers' Compensation, Div. of Coal Mine Workers' Compensation, 824 F.2d 287, 290 (4th Cir. 1987); see also Peabody Coal Co. v. Shonk, 906 F.2d 264, 270 (7th Cir. 1990); Kline v. Director, Office of Workers' Compensation Programs, U.S. Dep't of Labor, 877 F.2d 1175, 117879 (3d Cir. 1989).
 
 
 5
 As the ALJ and the Board noted, pneumoconiosis has both a narrow, clinical meaning-i.e., "coal dust in the lungs"-and a broader, regulatory definition. The latter encompasses any
 
 
 6
 chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment ... a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or aggravated by, dust exposure in coal mine employment.
 
 
 7
 20 C.F.R. § 727.202. Thus, bronchitis "significantly related to, or aggravated by" coal dust fits within the regulatory definition of pneumoconiosis. Adkins, 824 F.2d at 290. To establish § (b)(3) rebuttal, therefore, ICC had to break each potential link in the causal chain between Kinslow's employment-related exposure to coal dust, his diagnosed lung ailments, and his disability. Id .; see also Dockins v. McWane Coal Co., 9 BLR 1-57 (1986).
 
 
 8
 The record supports the conclusions of the ALJ and the Board that Dr. Zaldivar's testimony failed in this respect. Dr. Zaldivar stated that he employed the narrow, clinical definition of pneumoconiosis in his testimony instead of the broader, regulatory definition. J.A. 174; see also J.A. 164 (referring to "simple pneumoconiosis present radiographically"). Thus, it is rational to infer, as did the ALJ and the Board, that his testimony only ruled out any connection between Kinslow's clinical pneumoconiosis and his disability, without addressing the possible relationship between Kinslow's bronchitis and his disability. Adkins, 824 F.2d at 290; see also Kline, 877 F.2d at 1179.
 
 
 9
 Even assuming-against Dr. Zaldivar's own testimony-that he employed the regulatory definition of pneumoconiosis throughout his analysis, our assessment of the Board's decision would remain unchanged. Because Dr. Zaldivar gave no reasoned explanation for the lack of causal relationship between coal dust exposure and Kinslow's bronchitis, or between the bronchitis and the disability, ICC failed to establish § (b)(3) rebuttal. Id . The decision of the Benefits Board is
 
 
 10
 AFFIRMED.